IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

RYAN DANIEL WELTER,

        Defendant.

ORDER

20-cr-67-wmc-1

---

A hearing on the probation office's petition for judicial review of Ryan D. Welter's supervised release was held on August 18, 2020, before U.S. District Judge William M. Conley. The government appeared by Assistant U.S. Attorney Chadwick Elgersma. Defendant was present in person and by counsel Jeffrey Nichols. Also present was U.S. Probation Officer Yang Moua.

FACTS

From the record and evidence presented at the hearing, I make the following findings of fact. On February 7, 2014, defendant was sentenced in the U.S. District Court for the Northern District of Iowa Case No. 13-cr-1018-1 following his conviction for attempted manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, a Class C felony. Defendant was committed to the custody of the Bureau of Prisons to serve a term of imprisonment of 98 months, with a three-year term of supervised release to follow. On April 13, 2015, the custodial portion of defendant's sentence was reduced to 83 months under 18 U.S.C. § 3582(c)(2). All other aspects of the original sentence were unchanged.

On September 18, 2019, defendant began his term of supervised release in the Western District of Wisconsin. On May 28, 2020, jurisdiction of defendant's case was transferred to the Western District of Wisconsin, and his case was assigned to me.

On July 1, 2020, a report was submitted to the court alleging that defendant violated Standard Condition No 7, which states defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by physician (*see* Dkt. No. 2). As to those asserted violations, I make the following findings:

1) On November 8, 2019, defendant submitted a urine specimen that tested positive for methamphetamine and also divulged that he used the drug.

2) On November 20, 2019, defendant returned a sweat patch that tested positive for the use of methamphetamine, but also provided a urine sample that test negative.

3) On May 6, 2020, defendant submitted a urine specimen that tested positive for methamphetamine and admitted to using methamphetamine on two separate occasions.

Nevertheless, following review of the July 1 report and in consultation with the probation officer, the court agreed to provide defendant with additional time to bring himself into compliance and engage in dual diagnosis treatment.

Unfortunately, that did not go as planned. Instead, the defendant has continued to violate his conditions of supervised release. Specifically, defendant appeared to violate Standard Condition No. 7 again, which prohibits him from purchasing, using, distributing, or administering any controlled substance, except as prescribed by a physician, when he returned sweat patches that tested positive for methamphetamine on June 25 and July 14, 2020, although his urine tests came back negative. Regardless, after "ghosting" his probation officer, the defendant admitted on

2

August 1, 2020, that he used methamphetamine earlier that morning and also used it a few days earlier, apparently in hopes of obtaining placement at a residential drug treatment program.

Defendant also violated Standard Condition No. 11, which states he shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer, when he failed to report to his supervising probation officer that officers from the Dubuque, Iowa, Police Department initiated contact with him on July 6, 2020, to verify he was the owner of the vehicle he was entering.

Defendant further violated the mandatory condition prohibiting him from unlawfully possessing a controlled substance and requiring him to refrain from any unlawful use of a controlled substance and to submit to periodic drug tests. In particular, after repeated unanswered calls and messages from his probation officer between July 28 and a noon July 31, 2020, deadline, defendant failed to make himself available and report to the probation office as directed to allow for collection of a urine specimen from him, as well as collect a sweat patch previously applied. Additionally, defendant removed the sweat patch from his person without instruction from his probation officer, which prevented laboratory testing to be conducted. This behavior also violated Standard Condition No. 2, which requires that defendant report to the probation officer in a manner and frequency directed by the probation officer; and Standard Condition No. 10, which states the defendant shall permit a probation officer's visit at any time.

Finally, defendant violated Special Condition No. 1, which states defendant must participate in and successfully complete a program of testing and treatment for substance abuse, when he failed to attend his scheduled session with Wpf2 on July 30 and August 10, 2020.

Under 18 U.S.C. § 3583(g)(3) and (4), revocation is mandatory if defendant has tested positive for illegal controlled substances more than three times over the course of one year and

refused to comply with drug testing. Here, defendant admits testing positive for methamphetamine twice -- on November 8, 2019, and May 6, 2020 -- and with substantial certainty would have again had he reported between July 28 and 31, 2020, as directed.

## CONCLUSIONS

Defendant's proven violations support, but do not mandate, revocation. His criminal history category is V. Defendant's violations warrant revocation. Under the decision of the Seventh Circuit Court of Appeals decision in *United States v. Trotter*, 270 F. 3d 1150, 1152 (7th Cir. 2001), the court could also find that his most serious violations in this case constitute a Grade B violation because he possessed and used illegal drugs, resulting in at least two positive urine drug tests. With a Grade B violation, defendant would have an advisory guideline range of imprisonment of 18 to 24 months. The statutory maximum to which defendant can be sentenced upon revocation is two years under 18 U.S.C. § 3583(e)(3), because the offense of conviction is a Class C felony. Another term of supervised release is authorized under 18 U.S.C. § 3583(h).

Despite being amply justified, the court has decided to withhold revocation at this time. Instead, supervision will continue subject to the defendant's immediate arrest and residential placement at the Farhman Center when a bed becomes available.

## ORDER

IT IS ORDERED that defendant's term of supervised release imposed on February 7, 2014, is CONTINUED at this time and the following additional Special Condition No. 11 is imposed:

> The defendant shall be immediately arrested and held in custody until a bed becomes available at the Fahrman Center in Eau Claire, Wisconsin. The defendant is to spend 90 days in a residential reentry center at the Fahrman Center, as approved by the supervising U.S. Probation Officer, with admission upon the first available vacancy. Defendant may be absent from the center for employment purposes, for mental health counseling and treatment and for passes consistent with

program rules. Defendant is to pay defendant's own medical expenses, if any, and is to pay up to 100% toward the daily cost of residence as determined appropriate by the supervising U.S. Probation Officer. Defendant may be discharged early from the facility upon the approval of both the facility administrator and the supervising U.S. Probation Officer.

Defendant shall apply for and pursue all means of paying the full cost of his placement at the Fahrman Center by health insurance and his own resources.

Entered this 19th day of August, 2020.

BY THE COURT:

WILLIAM M. CONLEY
District Judge

Case: 3:20-cr-00067-wmc   Document #: 15   Filed: 08/19/20   Page 6 of 6